<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DIANA M. RIVERA ZUMBA,<br><br>                    *Petitioner*,<br><br>        v.<br><br>PAM BONDI, *Attorney General of the United States*, KRISTI NOEM, *Secretary of the Department of Homeland Security*, TODD M. LYONS, *Acting Director, United States Immigration and Customs Enforcement*; LUIS SOTO, *Director, Delaney Hall Detention Facility*,<br><br>                    *Respondents*. | Civ. No. 25-cv-14626 (KSH)<br><br><br><br><br><u>**OPINION**</u> |

**Katharine S. Hayden, U.S.D.J.**

**I.  Introduction**

        Petitioner Diana M. Rivera Zumba has filed a verified petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the legality of her detention and seeking release.  Presently before the Court is the question of jurisdiction, which was called into issue by respondents'[1] disclosure shortly after the petition was filed that petitioner had been moved out of this district.  And indeed, the record now reflects that beginning the day petitioner filed this action, she was in at least eight different states over four days, finally ending up across the country in Adelanto, California, where she remains.  With the benefit of the parties' arguments on the record and in

---

[1] Respondents are Pam Bondi, the Attorney General of the United States; Kristi Noem, Secretary of the Department of Homeland Security; Todd M. Lyons, Acting Director of United States Immigration and Customs Enforcement ("ICE"); and Luis Soto, Director of the Delaney Hall Detention Facility in Newark, New Jersey.

supplemental written submissions, the Court concludes that it retains jurisdiction to consider the petition.

## II.  Background

This background is drawn from the petition, the parties' respective submissions, and the matters the parties have otherwise made of record, and the material events are undisputed.

Petitioner is a 44-year-old native and citizen of Ecuador who entered the United States without inspection nearly 23 years ago, in September 2002, and has not left.  (D.E. 1, Verified Habeas Corpus Petition ("Pet'n") ¶ 9.)  Removal proceedings were initiated many years ago; specifically when is not a matter of record here, but no later than May 31, 2017, when petitioner and her husband (now deceased, as discussed *infra*) were issued a Notice to Appear in Removal Proceedings.  (*Id.* ¶ 10; D.E. 17-1, Declaration of Diego Sinchi ("Sinchi Decl."), Ex. A, Notice to Appear).)[2]

In the context of those proceedings, petitioner applied for cancellation of removal based on exceptional and extremely unusual hardship.  (*Id.* ¶ 11.)  On October 30, 2019, an immigration judge ("IJ") denied her application (and her husband's) and ordered both removed to Ecuador.  (*Id.* ¶ 12.)  Just over two months later, on January 9, 2020, petitioner's husband, who the petition describes as the lead applicant in the removal proceedings, died.  (*Id.* ¶ 13.)  Petitioner moved before the Board of Immigration Appeals ("BIA") to remand her case for further proceedings based on new evidence; that motion was granted on November 13, 2023, with the BIA remanding to the IJ for "further proceedings" and the "entry of a new decision." (*Id.* ¶¶ 14-15 & Ex. A.)  Since that remand nearly two years ago, petitioner has been awaiting a new court date before the Newark Immigration Court.  (*Id.* ¶ 16.)

---

[2] The petition's reference to a May 31, 20<u>07</u> NTA (Pet'n ¶ 10) appears to be a typographical error.

What led to the instant petition began on Friday, August 8, 2025, when petitioner, who lives in Newark with her son, was arrested by the "ICE Fugitive Unit . . . at a traffic light a few blocks from her house telling her that she had a final removal order and would be removed." (*Id.* ¶ 17; D.E. 16, Ex. A, Guaman Aff. ¶ 1.) On Monday, August 11, 2025, petitioner's counsel (who also represented her in the immigration case) served a letter on ICE advising that petitioner had an open removal case and that her detention and potential removal were unlawful. (Pet'n ¶¶ 14, 18 & Ex. B.) The letter also referenced a motion for bond, which petitioner filed the following day, August 12, 2025, with the Elizabeth Detention Center, resulting in a bond hearing being scheduled for August 19, 2025. (*Id.* ¶ 19; Ex. B, E.)

By the end of the day on August 12, 2025, as things stood, petitioner was detained at Delaney Hall in Newark, New Jersey; her attorney had advised ICE of her open immigration case and position that her detention was improper; and she had a pending bond hearing scheduled for one week hence. The following afternoon, on August 13, petitioner's counsel became aware through a conversation with petitioner's sister that petitioner expected to be moved out of Delaney Hall the following day, August 14, given that her account there had been closed. (D.E. 16, Ex. B, Affidavit of Regis Fernandez, Esq. ("Fernandez Aff.") ¶ 4.) Petitioner's son, John Guaman, similarly relayed to counsel around 7:00 a.m. on August 14 that, based on his conversation with petitioner around 6:30 a.m. that day, she expected to be sent to California that afternoon. (*Id.* ¶ 5; D.E. 16, Ex. B, Affidavit of John Guaman ("Guaman Aff.") ¶¶ 4-5.) Counsel understood from viewing the ICE online inmate locator around 8:00 a.m. that petitioner remained at Delaney Hall, and he prepared and filed this petition around 1:24 p.m. (Fernandez Aff. ¶¶ 5-6.)

The two-count petition under 28 U.S.C. § 2241 asserts that petitioner's detention is in violation of the due process clause of the United States Constitution (count I), and the Immigration and Nationality Act ("INA") (count II). (Pet'n ¶¶ 27-28.) By way of relief, petitioner sought immediate release, "absent a showing that she has a final order of removal or that circumstances have materially changed in her case." (*Id.* at 6.)

The petition was accompanied by an application for an order to show cause, which sought temporary restraints prohibiting respondents from transferring her out of this district. (*See* D.E. 1-2, Br. in Supp. OTSC, at 2; D.E. 1-3, Proposed OTSC.) But by that time, as will be discussed below, petitioner had already been moved out of New Jersey.

The Court convened a teleconference with counsel for petitioners and respondents the afternoon the petition was filed, at which respondents' counsel represented, after conferring with ICE, that petitioner had been transferred out of New Jersey that morning and was on her way to detention in California with at least one stop anticipated before her arrival there. Petitioner's counsel requested, and was granted, an adjournment until August 18, 2025, to address whether this Court had jurisdiction over the case. (*See* D.E. 4.)

On August 18, 2025, petitioner argued that this Court does have jurisdiction notwithstanding her transfer because she was in transit when the petition was filed. (D.E. 5.) The Court directed respondents to file their response that day and scheduled a conference for the following morning. (D.E. 6.) Respondents' submission, timely made, took the position that the Court lacks jurisdiction because petitioner had already been moved out of New Jersey when the petition was filed—she was, they represented, at the Baltimore/Washington Airport from 12:50 p.m. to 2:00 p.m. on August 14, which means "the District of Maryland had jurisdiction over the petition at the time it was filed." (D.E. 7, at 1-2.)

On Tuesday, August 19, 2025, the parties' attorneys appeared in person before the Court. After hearing argument, the Court concluded that further submissions were required on what was proving to be a rapidly changing set of facts, and that respondents had to supply the statutory basis on which they were detaining petitioner. Respondents' supplemental submissions were to include "appropriate factual support that provides a timeline of [petitioner's] whereabouts from August 8, 2025 to the present, including the time spent at each interim location until her arrival at her present place of confinement." (D.E. 11 ¶ 1.) Petitioner's counsel was also directed to file a similar chronology with the events as he knew them. (*Id.* ¶ 3.) And to preserve the Court's ability to have a hearing if warranted and to address the merits of the case generally, the Court also ordered that pending further order, petitioner was not to be transferred from her current location or removed from the United States. (D.E. 8, 11.)

Respondents' submission was due on Friday, August 22. They requested a three-day extension shortly before the filing deadline to present a "more complete record of the facts underlying the jurisdictional inquiry." (D.E. 14.) The Court granted that request (D.E. 15), giving respondents until noon the following Monday, and extended petitioner's time to respond to the day following; petitioner's attorneys' deadline for his declaration remained unchanged.

Accordingly, on August 22, 2025, petitioner filed two supplemental affidavits, that of her attorney (the Fernandez Affidavit) and her son (the Guaman Affidavit).[3] Together, they pieced together petitioner's journey from Delaney Hall to Adelanto, California. Guaman attested that in a "five-minute conversation" with petitioner—all she was allowed—around 8:00 p.m. on Friday, August 15, she advised that she was detained in, but would not be processed at, a detention

---

[3] Also attached was the immigration court's recent order denying as moot petitioner's bond motion (which was, as noted earlier, scheduled to be held on August 19, 2025) because she had been transferred. (D.E. 16, Ex. C.)

center in Louisiana, and expected her stay there to be temporary and that she would go to California in a day or two. (Guaman Aff. ¶ 6.) By Sunday, August 17, around 8:00 a.m., she told Guaman that she had arrived in California and been processed at a detention center in Adelanto, California. (*Id.* ¶ 7.)

Guaman at that point learned that petitioner's trip had not involved only the Louisiana stop but many more: from Delaney Hall in Newark, petitioner was taken by car to Baltimore, Maryland, then flown to Richman Detention Center in Monroe, Louisiana (where she arrived around midnight on August 14), then, leaving around 5:30 p.m. on August 15, taken by car to Texas, where she arrived at 11:00 p.m. on August 15, then, by unspecified means, taken to Arizona, arriving at 1:00 a.m. on August 16. (*Id.* ¶¶ 8-9.) Five and a half hours later, around 6:30 a.m., she was moved from Arizona to Las Vegas, Nevada, arriving at 11:00 a.m.; next, around 2:00 p.m., she was taken to Washington, then, finally, to Adelanto Detention Center in California. (*Id.* ¶ 9.)

In a phone conversation on August 20, 2025, petitioner told Fernandez she had arrived at the Adelanto Detention Center on Sunday, August 17, 2025, having been in transit since leaving Delaney Hall the morning of August 14, and had not been checked into any detention facility after Delaney Hall and before Adelanto. (Fernandez Aff. ¶ 10.)

On August 25, 2025, respondents filed a brief captioned as an answer to the petition, in which they took the position that ICE had arrested petitioner under INA § 235(b)(1), 8 U.S.C. § 1225(b)(2). (D.E. 17, Resp. Br., at 1.) Respondents continue to argue that the Court lacks jurisdiction over the petition because it was not filed in the district of confinement and named the wrong respondent. When the petition was filed, they assert, petitioner was in ICE custody in the District of Maryland, requiring the Court either to dismiss the petition or transfer it to the District

of Maryland (where petitioner was at the time of the filing) or to the Central District of California (where she is currently detained), or petitioner to start anew in the Central District of California. They further assert that even if the Court has jurisdiction, petitioner's claims fail on the merits.

Although respondents sought an extension of time in order to supply a "more complete record" for the jurisdictional inquiry, they offered one declaration, which fails to address petitioner's entire trip from New Jersey to California. (D.E. 17-1, Sinchi Decl.) In it, Diego Sinchi, a Supervisory Detention and Deportation Office with ICE Enforcement and Removal Operations ("ICE-ERO") in Newark, New Jersey, attests that on August 8, 2025, ICE-ERO arrested petitioner and transported her to Delaney Hall because she "is an alien present in the United States without admission or parole under [INA § 212(a)(6)(A)(i)]." (*Id.* ¶¶ 1, 3.) The apparent basis for this statement is an attached May 31, 2017 Notice to Appear.

Sinchi further states that petitioner was transferred out of Delaney Hall at 7:31 a.m.[4] on August 14, 2025, and, "via ground transportation," taken to Baltimore/Washington International Airport (BWI), where she arrived at 12:50 p.m. (*Id.* ¶¶ 4-5.) At some point between 1:00 p.m. and 1:30 p.m.—the period encompassing the filing of the petition, which the parties agree was 1:24 p.m.—she boarded an airplane, which left BWI at 2:00 p.m., headed for Louisiana. (*Id.* ¶ 5.) She "was scheduled to arrive" at a Louisiana airport at 4:30 p.m., and when she arrived, she was taken to Richwood Correctional Center in Monroe, Louisiana. (*Id.* ¶¶ 5-6.) Sinchi disclaimed any knowledge of petitioner's whereabouts between Richwood Correctional Center and her final location of Adelanto, California:

> 7.      The remainder of Petitioner's journey from Richwood Correctional Center to her final destination at Adelanto ICE Processing Center in Adelanto,

---

[4] All times in Sinchi's declaration are indicated as "local time" for the respective locations.

California, where she remains detained to date, is unknown to ICE-ERO Newark at this time.  It is my understanding that the information is in the possession of ICE-ERO Los Angeles.

8.      Petitioner was ultimately transferred to the Adelanto ICE Processing Center in Adelanto, California on August 16, 2025, where she remains detained to date.

9.      This is the most complete information available to ICE-ERO Newark at this time concerning Petitioner's whereabouts during the transfer from Delaney Hall Detention Facility in Newark, New Jersey to Adelanto ICE Processing Center in Adelanto, California.

(*Id.* ¶¶ 7-9.)  Only petitioner supplied a chronology for the remainder of her journey; respondents "do not dispute it at this time."  (D.E. 17, Resp. Br., at 4-5 n.2.)[5]

The following day, on August 26, 2025, petitioner filed her reply (D.E. 18), invoking exceptions to the immediate custodian and place of confinement rules for habeas jurisdiction, based on petitioner's unclear and in-transit status at the time of the petition's filing.  Petitioner also sharply disputed respondents' arguments on the merits of her claims, arguing that her detention was and remains unlawful.

## III. Discussion

Under 28 U.S.C. § 2241, the Court may "grant the writ of habeas corpus on the application of a prisoner held 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Bruce v. Warden Lewisburg USP*, 868 F.3d 170, 178 (3d Cir. 2017) (quoting 28 U.S.C. § 2241(c)(3)).  A § 2241 habeas petitioner challenging her "present physical custody within the United States" – as petitioner has done here – "should name [her] warden as respondent and file the petition in the district of confinement."  *Anariba v. Dir. Hudson Cnty.*

---

[5] Petitioner's submissions reflect an arrival date of August 17 in California, and Sinchi simply states that she was "transferred" there on August 16—suggesting she left for there on August 16, but not when she arrived.  The Court understands petitioner to have arrived on August 17, given that respondents do not dispute petitioner's chronology.

*Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004)).

This standard has two components: first, the "immediate custodian" rule, under which the "default" is that the proper respondent to a § 2241 habeas petition challenging present physical confinement is the person with custody over the petitioner—the "warden of the facility where the prisoner is being held," as opposed to "some . . . remote supervisory official," such as the Attorney General. *Padilla*, 542 U.S. at 434-35. Second is the "place of confinement" or "district of confinement" rule, which is rooted in § 2241(a)'s language that "writs of habeas corpus may be granted by . . . the district courts. . . within their respective jurisdictions." *See id.* at 442. This requirement allows the issuing court to reach the custodian. *Id.* ("We have interpreted this language [in § 2241(a)] to require 'nothing more than that the court issuing the writ have jurisdiction over the custodian.'" (citation omitted)); *see also id.* at 444 ("In habeas challenges to present physical confinement . . . the district of confinement is synonymous with the district court that has territorial jurisdiction over the proper respondent. . . . By definition, the immediate custodian and the prisoner reside in the same district.") (emphases omitted)).

This "simple rule" – immediate custodian plus district of confinement, when domestic physical custody is challenged – aims to effectuate the principle that habeas jurisdiction "lies in only one district," with one proper respondent who can produce the petitioner's body, thereby preventing forum shopping by petitioners, courts having overlapping jurisdiction, and the "inconvenience, expense, and embarrassment" of an alternative scenario where "every judge anywhere could issue the Great Writ on behalf of applicants far distantly removed from the courts whereon they sat." *Padilla*, 542 U.S. at 434-35, 442, 443, 447 (citation modified).

9

The *Padilla* majority rejected a scenario where this rule would bend or stretch based on the factual whims of each case. *See id.* at 448-49. But it also signaled that the rule is not ironclad, admitting of no exceptions under any scenario.

In a concurrence, Justice Kennedy, joined by Justice O'Connor (both also having joined the majority opinion), outlined as a situation warranting an exception one in which the government, which has both the petitioner and the knowledge of petitioner's whereabouts, acts in a way that prevents the petitioner's lawyer from accessing that information to exercise the petition right:

> The Court has made exceptions in the cases of nonphysical custody, of dual custody, and of removal of the prisoner from the territory of a district after a petition has been filed. In addition, I would acknowledge an exception if there is an indication that the Government's purpose in removing a prisoner were to make it difficult for his lawyer to know where the habeas petition should be filed, or where the Government was not forthcoming with respect to the identity of the custodian and the place of detention. In cases of that sort, habeas jurisdiction would be in the district court from whose territory the petitioner had been removed. In this case, if the Government had moved Padilla from the Southern District of New York but refused to tell his lawyer where he had been taken, the District Court would have had jurisdiction over the petition. Or, if the Government did inform the lawyer where a prisoner was being taken but kept moving him so a filing could not catch up to the prisoner, again, in my view, habeas jurisdiction would lie in the district or districts from which he had been removed.

*Padilla*, 542 U.S. at 454 (Kennedy, J., concurring) (internal citations omitted).

Further, the *Padilla* majority distinguished the scenario before it as straightforward and not tainted by manipulations that could affect jurisdiction: "There is no indication that there was any attempt to manipulate behind Padilla's transfer-he was taken to the same facility where other al Qaeda members were already being held, and the Government did not attempt to hide away from Padilla's lawyer where it had taken him. . . . His detention is thus not unique in any way

that would provide arguable basis for a departure from the immediate custodian rule." *Id.* at 441 (majority opinion); *see also id.* at 450 n.18.

This awareness at the highest level that detention decisions could breed mischief found expression in the Third Circuit in 2021 when it decided *Anariba v. Hudson County Correctional Center*, 17 F.4th 434. Reversing the district court's determination that Angel Argueta Anariba in filing a motion under Rule 60(b) was improperly bringing a second, separate habeas petition, the Third Circuit discussed a second basis for permitting the petitioner to go ahead with his claims after he was moved out of New Jersey: the government's blatant post-petition transfers of Argueta from ICE facility to facility. The panel noted that "the Government has transferred Argueta at least 15 times to 6 different facilities in 4 different states. When continuous transfer permeates the reality of ICE detention, it suggests that the Government has the machinery already in place to permit extensive forum shopping." *Id.* at 448.

The court was particularly concerned with the havoc that could be wrought through post-petition maneuvers, noting

> the Government could willingly transfer an ICE detainee seeking habeas relief from continued detention to a jurisdiction that is more amenable to the Government's position, or the Government could transfer an ICE detainee for the purpose of intentionally introducing complicated jurisdictional defects to delay the merits review of already lengthy § 2241 claims. Taken to an extreme, the Government could transfer a petitioner with such consistency as to evade a district court ever even obtaining jurisdiction over a petitioner's § 2241 claims.

*Id.* at 447.

The facts here take this case "to an extreme" where the government has transferred petitioner with such consistency as to evade jurisdiction over her § 2241 claims at the time she filed them. The remedy for that, and to preserve the petitioner's access to the habeas corpus writ, is the "unknown custodian" exception, which encompasses situations where either the custodian

11

or place of confinement, or both, are made unknown to petitioner or her attorney. *See Suri v. Trump*, 2025 WL 1806692, at *4-6 (4th Cir. July 1, 2025) (government did not establish strong likelihood of success on argument that district court lacked habeas jurisdiction due to petitioner's physical absence from district at time of filing, and concluding that district court had properly applied "unknown custodian" exception); *Munoz-Saucedo v. Pittman*, 2025 WL 1750346, at *2-4 (D.N.J. June 24, 2025) (O'Hearn, J.) (applying exception where petitioner's attorneys "received conflicting, inaccurate, and delayed information about [petitioner's] whereabouts," and he "was not permitted to communicate his location or ultimate destination during transit"); *Khalil v. Joyce*, 777 F. Supp. 3d 369, 396-410 (D.N.J. 2025) (Farbiarz, J.) (discussing and applying exception).

It is appropriate to apply the exception in this case.  First, there is the movement of petitioner by car out of Newark early on Thursday morning when ICE officials knew that her attorney had obtained a bond hearing nearby the following Tuesday.  Second, there were multiple stops over multiple days; respondents' suggestion that during the first one, Baltimore airport, the District of Maryland obtained jurisdiction over petitioner's habeas petition being filed at that moment in federal court in Newark, where the ICE locator indicated petitioner was being held, is unavailing.

Petitioner was not checked in at any facility where a custodian could be found to put on the caption; respondents have never identified who that custodian was or could have been; and the information on where she was certainly was not available to either petitioner or her attorney until after the fact.  For days and nights thereafter, respondents' declarant states he doesn't know where she was and with every passing hour, petitioner was without the remedy of the Great Writ.  Respondents' suggestion that petitioner could simply refile in the Central District of California institutionalizes this view.  That untenable scenario is rejected.  *Khalil*, 777 F. Supp. 3d at 410

(citing authority supporting that "there is no gap in the fabric of habeas—no place, no moment, where a person held in custody in the United States cannot call on a court to hear his case and decide it").

As petitioner argues, in respondents' concept, "habeas jurisdiction would potentially amount to an elusive exercise of whack-a-mole with jurisdiction potentially vesting in multiple jurisdictions or none at all since there is no known location or known custodian during this 4-day trip." (D.E. 18, at 4.)  A trip, the facts show, by air and car and "ground transportation" hustling petitioner from state to state to a location thousands of miles from her lawyer and her son, who were initially led to believe she was going to California—but never told, again until after the fact, that she would be in more than a half-dozen places before she got there.  This is contrary to the principle, as elucidated in *Padilla* and discussed above, that jurisdiction vests squarely in *one* jurisdiction.

And third, most disturbingly, these movements designed to defeat the unfolding of petitioner's known legal position – that she was improperly detained in the first place –  executes what respondents' submission on its detention authority announces:  ICE's policy change that would deny her a bond hearing, mystifyingly classify her for the first time and in the face of undisputed facts (beginning with her presence in the United States since 2002) as "an arriving alien seeking admission"; and – as ICE's actions beginning early on August 14 show – expose her to expedited deportation.

The record therefore compels the conclusion that petitioner properly filed in New Jersey, the last known location known, and reasonably knowable, to her and to her attorney under the circumstances, and as a corollary, properly named her immediate custodian there, the director of Delaney Hall, *see Suri*, 2025 WL 1806692, at *6; *see also Padilla*, 542 U.S. at 454 (Kennedy, J.,

concurring), and also appropriately named the more remote custodians as respondents, whether as a matter of the unknown custodian exception or so as to effectuate any future relief the Court may grant, while the facts relevant to that issue are developed, *see Padilla*, 542 U.S. at 440 & n.14; *Munoz-Saucedo*, 2025 WL 1750346, at *4.  Neither jurisdiction-based dismissal, nor transfer to the District of Maryland (where petitioner was for at most 70 minutes, and had no identified or identifiable custodian)[6] or to the Central District of California (where petitioner's ostensible custodian did not have control over her until three to four days *after* the petition was filed, and thus could not have been named at the time of filing) is warranted.  *See* 28 U.S.C. § 1631 (permitting transfer to court where action "could have been brought at the time it was filed or noticed"); *Padilla*, 542 U.S. at 453 (Kennedy, J., concurring) ("When an exception applies, courts must still take into account the considerations that in the ordinary case are served by the immediate-custodian rule, and, in a similar fashion, limit the available forum to the one with the most immediate connection to the named custodian.").

What is called for now is attention to the basis respondents have given for detaining her in the first place, its weeks-old policy change, which petitioner takes head-on in her reply (D.E. 18).  This is the core issue of the habeas petition, that the policy change subjecting petitioner to

---

[6] Respondents contend that petitioner "sues the incorrect respondent" and "names the wrong custodian" (D.E. 17, at 1, 6) but do not identify whom the petition should have named.  Instead, they merely state that petitioner's "immediate custodian is *now* the Warden of the Adelanto ICE Processing Center in Adelanto, California," rather than the warden of Delaney Hall.  (*Id.* at 8.) On this record, respondents, who are in exclusive possession of this information, have not established that *anyone* was petitioner's custodian in Maryland; this Court cannot be deprived of jurisdiction based on petitioner's failure to name a nonexistent Maryland custodian.  *Ozturk v. Hyde*, 136 F.4th 382, 393 (2d Cir. 2025) (where government had "never clarified who, if it was not [Hyde, the ICE field director named in petition as custodian], had immediate custody of [petitioner] in transit," either Hyde was the proper custodian, or the custodian "remains unknown"; under those circumstances, "immediate custodian" rule did not defeat court's jurisdiction).

14

mandatory detention is unlawful and that the provisions of INA § 236(a), 8 U.S.C. § 1226(a), apply to petitioner's detention, and not INA § 235(b), 8 U.S.C. § 1225(b).

Accordingly, respondents shall SHOW CAUSE on **Friday, September 12, 2025, at 10:00 a.m.**, why petitioner is not being unlawfully detained under 8 U.S.C. § 1225(b) and why she should not be immediately released from detention. To permit a full record for its decision, the Court will hold a hearing at which both sides may present argument and evidence.   In advance, respondents shall submit their brief, exhibits and witness list by **Friday, September 5, 2025, at 5:00 p.m.,** and petitioner shall submit her brief, exhibits and witness list by **Tuesday, September 9, 2025, at 5:00 p.m.**

The Court's order enjoining petitioner's transfer or removal remains in effect to preserve the status quo until this matter concludes. The All Writs Act, 28 U.S.C. § 1651(a), empowers the federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." As explained by the district court in *Abrego Garcia v. Noem*, 2025 WL 2062203, at *6 (D. Md. July 23, 2025), "courts have recently invoked the All Writs Act to preserve their jurisdiction over constitutional challenges to lightning-fast deportations."  *Accord A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1369 (2025) (relying on All Writs Act to prevent deportation of group of immigrant detainees until constitutional claims could be heard on merits; noting that "we had the power to issue injunctive relief to prevent irreparable harm to the applicants and to preserve our jurisdiction over the matter") (citing 28 U.S.C. § 1651(a)); *see also Ozturk*, 136 F.4th at 394 (affirming district court's equitable authority under the All Writs Act to order the return of an immigration detainee from Louisiana to Vermont); *Perez Parra v. Castro*, 765 F. Supp. 3d 1241, 1243 (D.N.M. 2025) (finding that All Writs Act provided the court with the authority to temporarily enjoin the transfer of petitioners to

Guantanamo Bay to maintain the status quo until the conclusion of the matter); *Arostegui-Maldonado v. Baltazar*, -- F. Supp.3d --, No. 25-cv-2205, 2025 WL 2280357, at *16 (D. Colo. Aug. 8, 2025) (relying on All Writs Act to enter an injunction preventing immigration detainee's transfer out of the District of Colorado during the pendency of his habeas action); *Abrego Garcia*, 2025 WL 2062203, at *6 (relying on the All Writs Act to limit petitioner's transfer to three nearby districts).

In this matter, ICE surreptitiously moved petitioner far away from her immigration proceedings and her attorney, across multiple states, and may remove her on an expedited basis pursuant to a new and unprecedented policy[7] prior to this Court's ruling on her constitutional challenge.  Petitioner's unlawful deportation would plainly amount to irreparable harm.  To prevent this, the Court's prior orders (D.E. 8, 11) remain in effect.

## IV. Conclusion

For the reasons set forth above, the Court has jurisdiction, and the parties are direct to file their submissions as outlined above.  An appropriate order will follow.


Date: August 28, 2025

*s/Katharine S. Hayden*
Katharine S. Hayden, U.S.D.J

---

[7] Prior to this policy change, it appears uncontested that if the government arrested petitioner on the basis of her inadmissibility, she would be discretionarily detained under INA § 236(a), 8 U.S.C. § 1226(a), and would be eligible for a bond hearing. (*See* D.E. 17, at 16-17.) Under this new policy, however, the government purports that petitioner and all noncitizens who entered and without inspection or admission and reside here are "applicants for admission" under INA § 235(b), 8 U.S.C. § 1225(b). (*See id.* at 17-18.) Applicants for admission under INA § 235(b), unlike other noncitizens who are already present in the United States, are not entitled to bond hearings and are subject to mandatory detention during their removal proceedings. (*Id.*) Petitioner argues that this reclassification is contrary to the INA and that her detention under INA § 235(b) violates her right to due process of law.