**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DIANA M. RIVERA ZUMBA,

      *Petitioner*,

 v.

PAM BONDI, *Attorney General of the United States*, KRISTI NOEM, *Secretary of the Department of Homeland Security*, TODD M. LYONS, *Acting Director, United States Immigration and Customs Enforcement*; LUIS SOTO, *Director, Delaney Hall Detention Facility*,

      *Respondents*.

Civ. No. 25-cv-14626 (KSH)

**OPINION**

**Katharine S. Hayden, U.S.D.J.**

   This habeas case requires the Court to decide whether petitioner, a noncitizen who has lived in the United States for over 20 years, is unlawfully detained under § 235 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225, which subjects certain noncitizens to mandatory detention during their removal proceedings. In a prior decision, the Court determined that it has jurisdiction over the petition, and has since ordered briefing and heard arguments on the merits of the case. For the reasons explained below, the Court finds that the plain language of § 1225 does not apply to petitioner and her mandatory detention violates the INA and the Due Process Clause of the Fifth Amendment. At this time, the Court **GRANTS** the habeas petition and directs respondents[1] to release petitioner from immigration detention within 24 hours and

---

[1]  The respondents in this action are the Attorney General of the United States, the Secretary of the Department of Homeland Security ("DHS"), the Director of the United States Immigration and Customs Enforcement ("ICE"), and the Director of the Delaney Hall Detention Facility.

enjoins them from detaining her again under § 1225.  To make the habeas remedy effective, the

Court temporarily enjoins respondents from re-arresting petitioner under INA § 236, 8 U.S.C.

§ 1226 for 14 days to permit her to return home to New Jersey.

## I.    RELEVANT BACKGROUND & PROCEDURAL HISTORY

### a.  Petitioner's Entry Without Inspection and Subsequent Removal Proceedings

Petitioner is a 44-year-old native and citizen of Ecuador who entered the United States

without inspection 23 years ago, in September 2002, and has not left.  (D.E. 1, Verified Habeas

Corpus Petition ("Pet'n") ¶ 9.)  Removal proceedings were initiated no later than May 31, 2017,

when petitioner and her husband (now deceased) were issued a Notice to Appear in Removal

Proceedings ("NTA").  (*Id.* ¶ 10; D.E. 17-1, Declaration of Diego Sinchi ("Sinchi Decl."), Ex. A,

Notice to Appear.)[2]

Petitioner applied for cancellation of removal based on exceptional and extremely

unusual hardship.  (Pet'n ¶ 11.)  On October 30, 2019, an immigration judge ("IJ") denied her

application (and her husband's) and ordered both removed to Ecuador.  (*Id.* ¶ 12.)  Just over two

months later, on January 9, 2020, petitioner's husband, who the petition describes as the lead

applicant in the removal proceedings, died.  (*Id.* ¶ 13.)  Petitioner moved before the Board of

Immigration Appeals ("BIA") to remand her case for further proceedings based on new

evidence; that motion was granted on November 13, 2023, with the BIA remanding to the IJ for

"further proceedings" and the "entry of a new decision."  (*Id.* ¶¶ 14-15 & Ex. A.)  Since that

remand nearly two years ago, petitioner has been awaiting a new court date before the Newark

Immigration Court.  (*Id.* ¶ 16.)

---

[2] The petition's reference to a May 31, 2007 NTA (Pet'n ¶ 10) appears to be a typographical
error.

### b. ICE Arrests Petitioner and Moves her Across the Country Prior to her Bond Hearing

On Friday, August 8, 2025, petitioner, who lives in Newark with her son, was arrested by the "ICE Fugitive Unit . . . at a traffic light a few blocks from her house telling her that she had a final removal order and would be removed." (*Id.* ¶ 17; D.E. 16, Ex. A, Affidavit of John Guaman ("Guaman Aff.") ¶ 1.) On Monday, August 11, 2025, petitioner's counsel served a letter on ICE advising that petitioner had an open removal case and that her detention and potential removal were unlawful. (Pet'n ¶¶ 14, 18 & Ex. B.) Counsel also advised that he was filing a motion for bond. (*Id.* ¶ 19 & Ex B.) That motion was filed the following day with the Elizabeth Detention Center, resulting in a bond hearing being scheduled for August 19, 2025. (*Id.* & Ex. E.)

As of August 12, petitioner was detained at Delaney Hall in Newark, New Jersey; her attorney had advised ICE of her open immigration case and argued that her detention was improper; and she had a pending bond hearing scheduled in one week. The following afternoon, August 13, petitioner's sister told her attorney that petitioner's account at Delaney Hall had been closed, and she expected petitioner to be moved out of Delaney Hall the following day, August 14. (D.E. 16, Ex. B, Affidavit of Regis Fernandez, Esq. ("Fernandez Aff.") ¶ 4.) Early the next morning, petitioner's son, John Guaman, told counsel that, based on his conversation with petitioner around 6:30 a.m. that day, she expected to be moved to California that afternoon. (*Id.* ¶ 5; Guaman Aff. ¶¶ 4-5.)

### c. Petitioner's Attorney files a Habeas Petition on August 14

After hearing from her son, petitioner's attorney checked the ICE online inmate locator around 8:00 a.m. and saw that she remained at Delaney Hall. (Fernandez Aff. ¶¶ 5-6.) He prepared this petition and filed it around 1:24 p.m. (*Id.*)

The two-count petition under 28 U.S.C. § 2241 asserts that petitioner's detention is in violation of the Due Process Clause of the United States Constitution (count I), and the INA (count II).  (Pet'n ¶¶ 27-28.)  By way of relief, petitioner sought immediate release, "absent a showing that she has a final order of removal or that circumstances have materially changed in her case."  (*Id.* at 6.)  (There is no suggestion that material changes have occurred.)

The petition was accompanied by an application for an order to show cause, which sought temporary restraints prohibiting respondents from transferring petitioner out of this district.  (*See* D.E. 1-2, Br. in Supp. OTSC, at 2; D.E. 1-3, Proposed OTSC.)  The Court reviewed the papers, and held a status conference by telephone.  (D.E. 2.)  There, counsel for respondents reported that ICE personnel had driven petitioner out of the District of New Jersey that morning.  (D.E. 3.)

### d.  The Court Determines that it has Jurisdiction

During that phone conference on August 14, respondents told the Court that petitioner had been taken to Baltimore and was in the Baltimore/Washington International Airport ("BWI Airport") at the time this petition was filed.  They argued the Court lacked jurisdiction.  The Court granted petitioner's attorney a short time to explore the facts behind her transfer out of Delaney Hall while her bond hearing was pending, and he reported on Monday, August 18 that he was prepared to argue the Court had jurisdiction to grant the relief sought.  (D.E. 5.)  The Court scheduled a hearing for the following day, August 19 (D.E. 6, 9), ironically the very day that petitioner was due to appear before an IJ and seek release on bond.  Instead, this Court heard from respondents about petitioner's transfer, which took her through several states between the prior Thursday and Sunday and ultimately brought her to an ICE detention facility in California. The Court ordered further briefing, and under its authority under the All Writs Act, entered a

temporary stay of petitioner's transfer or removal. (D.E. 8.) The Court entered an order that afternoon directing the parties to provide a timeline of petitioner's cross-country journey and also directed respondents to identify the statutory basis for petitioner's detention. (D.E. 11.)

On Monday, August 25, respondents filed a brief captioned as an answer to the petition, stating that ICE had arrested petitioner under INA § 235(b)(1), 8 U.S.C. § 1225(b)(2). (D.E. 17, Resp. Br., at 1.) As to the timeline, respondents established only that petitioner was driven by car on August 14 from Delaney Hall in Newark to BWI Airport, flown to Richwood Correctional Center in Monroe, Louisiana, and eventually reached her final destination at the Adelanto ICE Processing Center in Adelanto, California. (D.E. 17-1, Sinchi Decl. ¶¶ 5-8.) It was petitioner's son John Guaman who gave the further details: she was flown from Maryland to Richwood Detention Center in Monroe, Louisiana (where she arrived around midnight on August 14), then, leaving around 5:30 p.m. on August 15, taken by car to Texas, where she arrived at 11:00 p.m. on August 15, then, by unspecified means, taken to Arizona, arriving at 1:00 a.m. on August 16. (Guaman Aff. ¶¶ 8-9.) Five and a half hours later, around 6:30 a.m., she was moved from Arizona to Las Vegas, Nevada, arriving at 11:00 a.m.; next, around 2:00 p.m., she was taken to Washington, then, finally, to Adelanto Detention Center in California, arriving Sunday August 17. (*Id.* ¶ 9.) These details have not been disputed.

The Court issued a written decision on August 28, 2025, resolving the jurisdictional issue in petitioner's favor, finding that the petition was properly filed in this District under the "unknown custodian" exception. (D.E. 20, 21.) The Court also issued a Show Cause Order directing respondents to show cause why the petitioner should not be immediately released, ordered supplemental briefing, and directed the parties to submit a witness list for a hearing to be

held on September 12. (*Id.*) The Court continued the stay of petitioner's transfer or deportation pending further order. (*Id.*)

### e. The Merits of the Petition

On September 5, respondents filed their response to the Show Cause Order. (D.E. 23.) On September 8, they submitted supplemental authority -- a September 5, 2025 decision by the BIA, *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). (D.E. 24-1.) On September 9, Petitioner's counsel submitted his reply brief. (D.E. 25.) On September 11, respondents provided petitioner and the Court with a copy of the I-200 arrest warrant, which was issued on July 16, 2025 and signed on August 8, 2025, by a supervisory deportation officer. (D.E. 26.)

At the Show Cause hearing on September 12 (D.E. 27), the parties did not call witnesses and respondents represented that they would raise no challenges to the Court's jurisdiction at that time and intended to proceed to the merits. (Sept. 12 Hearing Tr. at 3:21-23.) They explained that petitioner is mandatorily detained pursuant to a very recent policy change, "quite a big one from the prior practice of the Department of Homeland Security" (*id.* at 9:1-2), which was promulgated on or about July 8, 2025 by way of "an internal memo" (*id.* at 9:6-7) and represents DHS's "formal position" expanding the category of persons who must be mandatorily detained under INA § 235, 8 U.S.C. § 1225. (*Id.* at 8:13-14.) Respondents view this new policy as not a "change" but rather a "correction or clarification" (*id.* at 8:22-24), and it sweeps petitioner -- and, by extension, all inadmissible noncitizens in the United States who entered without inspection -- under the provisions of § 1225, subjecting them to mandatory detention during their removal proceedings. (*Id.* at 8:13-21; D.E. 17, Resp. Br., at 17-18.) Respondents acknowledge that up until July 8 the "predominant form of detention authority" for petitioner and other noncitizens arrested in the interior of the United States was § 1226(a). (*Id.* at 22:4-11 ("I don't think there is

6

any doubt that 1226 has been the predominant form of detention authority for folks who are in the country, whether admitted or not.").)  After respondents' arguments concluded, the Court adjourned the remainder of the hearing to continue on September 16, 2025.  (D.E. 27.)

When the hearing resumed, co-counsel for petitioner, who had entered her appearance the day before, argued that petitioner's detention is unlawful based on the functions of INA §§ 235 and 236 as embodied in 8 U.S.C. §§ 1225 and 1226.  (D.E. 29.)

The matter is fully briefed and argued, and ready for decision.

## II.    <u>STANDARD OF REVIEW</u>

The Constitution guarantees that the writ of habeas corpus is available to every individual detained within the United States.  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art. I, § 9, cl. 2).  District courts have the power to grant writs of habeas corpus.  28 U.S.C. § 2241(a).  A district court's authority includes jurisdiction to hear habeas challenges to immigration-related detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).  The burden is on petitioner to show that she is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## III.    <u>DISCUSSION</u>

### a.   **Respondents' July 8 Policy Change**

This case presents one of "a growing number of challenges in this District and across the country" to respondents' new policy of mandatory detention for all noncitizens charged with entering the United States without inspection, which potentially "subjects millions of noncitizens to mandatory prolonged detention without the opportunity for release on bond, no matter how long they have resided within the country."  *Maldonado Vazquez v. Feeley*, 2025 WL 2676082, at *1 (D. Nev. Sept. 17, 2025).  Respondents' policy change "reflects a novel interpretation of the

immigration detention statutes," adopted a little over two months ago.  *See Martinez v. Hyde*, -- F. Supp. 3d --, 2025 WL 2084238, at *4-5 & nn.9-11 (D. Mass. July 24, 2025).  Respondents readily admit that if petitioner had been arrested on the basis of her inadmissibility prior to July 8, 2025, she would have been discretionarily detained under 8 U.S.C. § 1226(a) and eligible for a bond hearing.  (*See* Sept. 12 Hearing Tr. at 22:4-11; D.E. 17, Resp. Br., at 16-17.)

The record before this Court does not include the internal memo that "overwhelmingly changed most of the practice" of detention (Sept. 12 Hearing Tr. at 11:6), but it was located and cited in recent decisions by district judges also dealing with the legality of mandatory detention of noncitizens arrested and charged with entering the United States without inspection.  As described by Judge Boulware in *Maldonado Vazquez v. Feeley*:

> On July 8, 2025, DHS instituted a notice titled "Interim Guidance Regarding Detention Authority for Applicants for Admission" to all ICE Employees.  The Notice indicated that DHS, in coordination with the DOJ, "revisited its legal position" on the INA and determined that § 1225(b)(2), rather than § 1226, is the applicable immigration authority for any alien present in the U.S. "who has not been admitted . . . whether or not at a designated port of arrival."  Accordingly, "it is the position of DHS that such aliens are subject to [mandatory] detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole."  The Notice further provides "[t]hese aliens are also ineligible for a custody redetermination hearing (bond hearing) before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS.  For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated."

> 2025 WL 2676082, at *5 (footnotes omitted); *see also Martinez*, 2025 WL 2084238, at *4 & n.10.

Petitioner is one of the millions of noncitizens living within the United States facing drastic consequences from respondents' policy change.  There is no final order of removal in her case; rather, she is in removal proceedings with substantive protections under the INA, entitled to bond and a hearing on the merits before an IJ (for which she has waited over two years) with rights of appeal.

8

Through the years since she was first served with a NTA in 2017, petitioner has never been detained.  At present, there is no suggestion that she is close to a merits hearing that was ordered in 2023.  Her detention subjects her to months, arguably years of ICE custody, aggravated further by her transfer to the other side of the country.  Her habeas petition squarely presents the lawfulness of the policy change making her ineligible for a bond hearing before an IJ and directing that she "may not be released for the duration of [her] removal proceedings absent a parole by DHS."  As such, the detention authority granted to DHS and ICE under 8 U.S.C. §§ 1225 (argued for by respondents) and 1226 (argued for by petitioner) must be construed.

### b.  The Statutes

Respondents argue their detention authority rests in §§ 1225(a)(1) and 1225(b)(2).  This

is how the language of these sections appears in context with appropriate section headings:

**8 USC 1225: Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing**

Text contains those laws in effect on September 23, 2025

From Title 8-ALIENS AND NATIONALITY
    CHAPTER 12-IMMIGRATION AND NATIONALITY
    SUBCHAPTER II-IMMIGRATION
    Part IV-Inspection, Apprehension, Examination, Exclusion, and Removal

## §1225. Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing

**(a) Inspection**

**(1) Aliens treated as applicants for admission**

An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

**(2) Stowaways**

An arriving alien who is a stowaway is not eligible to apply for admission or to be admitted and shall be ordered removed upon inspection by an immigration officer. Upon such inspection if the alien indicates an intention to apply for asylum under section 1158 of this title or a fear of persecution, the officer shall refer the alien for an interview under subsection (b)(1)(B). A stowaway may apply for asylum only if the stowaway is found to have a credible fear of persecution under subsection (b)(1)(B). In no case may a stowaway be considered an applicant for admission or eligible for a hearing under section 1229a of this title.

**(3) Inspection**

All aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers.

**(4) Withdrawal of application for admission**

An alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States.

**(5) Statements**

An applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant in seeking admission to the United States, including the applicant's intended length of stay and whether the applicant intends to remain permanently or become a United States citizen, and whether the applicant is inadmissible.

As will be seen, context is important, hence the language regarding inspection in

subparagraphs (2) through (5) is set out.  The next portion of § 1225 respondents rely on, the

portion that is cited in the July 8 internal memo, is § 1225(b)(2)(A):

**(b) Inspection of applicants for admission**

. . . .

**(2) Inspection of other aliens**

**(A) In general**

Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

**(B) Exception**

Subparagraph (A) shall not apply to an alien-
(i) who is a crewman,
(ii) to whom paragraph (1) applies, or
(iii) who is a stowaway.

Petitioner rejects application of § 1225 in its entirety and argues she may only be arrested

and detained, discretionarily, under § 1226(a).

**8 USC 1226: Apprehension and detention of aliens**
Text contains those laws in effect on September 23, 2025

**From Title 8-ALIENS AND NATIONALITY**
CHAPTER 12-IMMIGRATION AND NATIONALITY
SUBCHAPTER II-IMMIGRATION
Part IV-Inspection, Apprehension, Examination, Exclusion, and Removal

**§1226. Apprehension and detention of aliens**

**(a) Arrest, detention, and release**

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General-
(1) may continue to detain the arrested alien; and
(2) may release the alien on-
(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
(B) conditional parole; but

(3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

The contrast is evident.

Under § 1225(b)(2)(A), "the alien **shall be detained** for a proceeding under section

1229a of this title." (Section 1229(a) governs removal proceedings, described above, in which

petitioner has been issued a notice to appear).

Under § 1226(a) the Attorney General **may release** a detainee on bond on the authority of ICE or by an IJ.  There are standards for release:  bond is available if the detainee "demonstrate[s] . . . that such release would not pose a danger to property or persons, and that [he] is likely to appear for any future proceeding."  8 C.F.R. § 236.1(c)(8).  "[T]he immigration judge is authorized to exercise the authority . . . to detain the alien in custody, release the alien, and determine the amount of bond."  *Id.* § 236.1(d)(1).  If denied release at the initial bond hearing, a § 1226(a) detainee may request a custody redetermination hearing before an IJ.  That request will "be considered only upon a showing that the alien's circumstances have changed materially."  *Id.* § 1003.19(e).  There are additional procedural protections, as both the initial bond determination and subsequent custody decisions can be appealed to the BIA.  *Id.* § 236.1(d)(3); *see also Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 275 (3d Cir. 2018) (explaining relevant process for detainees subject to § 1226(a)).

The impact of the policy change, then, is drastic.

### c.   The Functional Distinction between §§ 1225 and 1226

In examining the relevant provisions of §§ 1225 and 1226, the Court considers "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case."  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997).  The Court's "job is to interpret the words consistent with their 'ordinary meaning . . . at the time Congress enacted the statute.'"  *Wis. Cent. Ltd v. U.S.*, 585 U.S. 274, 277 (2018) (quoting *Perrin v. U.S.*, 444 U.S. 37, 42 (1979)); *see also New Prime Inc. v. Oliveira*, 586 U.S. 105, 113 (2019) (If courts could "freely invest old statutory terms with new meanings, we would risk amending legislation" and "upsetting reliance interests in the settled meaning of a statute") (internal quotations and citations omitted).  Of course, the words of a statute "cannot be construed in a vacuum.  It is a fundamental canon of statutory construction that the words of a statute must be read in their

Case 2:25-cv-14626-KSH    Document 31    Filed 09/26/25    Page 13 of 23 PageID: 280

context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Services, Inc.*, 566 U.S. 93, 101 (2012) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)).

It is petitioner's position that a line must be drawn between how §§ 1225 and 1226 function when it comes to detention of noncitizens, and it is straightforward: detention authority in § 1225 is exercised at or near the port of entry; and detention authority arises from § 1226 when a noncitizen is arrested in the interior of the United States. "Section 235 [§ 1225] specifically contemplates arriving, seeking, the present tense of someone *at the port of entry*." (Sept. 16 Hearing Tr. 25:22-24 (emphasis added).) For noncitizens already present within the borders, "Congress contemplated that people who have been living in the United States who have children, who have equities, they still have to go through removal proceedings. They have a right to see an immigration judge. And they also may be, or they also are entitled to a bond hearing before an immigration judge." (*Id.* at 17:7-12.) And so those noncitizens are subject to the detention described in § 1226(a).

Petitioner is not alone.

The line historically drawn between these two sections, making sense of their text and the overall statutory scheme, is that section 1225 governs detention of non-citizens "seeking admission into the country," whereas section 1226 governs detention of non-citizens "already in the country."

*Martinez*, 2025 WL 2084238, at *8 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 288-89 (2018)). And,

[T]he Court finds the structure of § 1225(b)(2) further indicates that it authorizes mandatory detention for noncitizens entering, attempting to enter, or who have recently entered the U.S., and does not encompass individuals like Petitioner, who entered long ago, are not taking affirmative steps that could be characterized as "seeking admission," and have been residing in the U.S. for years.

13

*Maldonado Vazquez*, 2025 WL 2676082, at *13; *see also Lopez-Campos v. Raycraft*, 2025 WL 2496379, at *8 (E.D. Mich. Aug. 29, 2025) ("There can be no genuine dispute that Section 1226(a), and not Section 1225(b)(2)(A), applies to a noncitizen who has resided in this country for over twenty-six years and was already within the United States when apprehended and arrested during a traffic stop, and not upon arrival at the border."); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1261 (W.D. Wash. 2025) (holding that § 1226(a), not § 1225(b)(2), governs detention of a noncitizen who had resided in the United States for 15 years).

The Court agrees, for the following reasons.

Section 1225 and particularly § 1225 (b)(2)(A), which underlies the July 8 policy change, require an "examining immigration officer" who makes a determination that the alien seeking admission is "not clearly and beyond a doubt entitled to be admitted," and on that determination then detains the alien for "a proceeding under section 1229(a)," which are full removal proceedings during which the alien must be detained. As authority, respondents argue that § 1225(b) requires the mandatory detention of two different categories of noncitizens, and emphasize that the *Jennings* Court viewed § 1225(b)(2) as a "catchall provision":

> As relevant here, applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2). Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation. *See* § 1225(b)(1)(A)(i) (citing §§ 1182(a)(6)(C), (a)(7)). Section 1225(b)(1) also applies to certain other aliens designated by the Attorney General in his discretion. *See* § 1225(b)(1)(A)(iii). Section 1225(b)(2) is broader. It serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here). *See* §§ 1225(b)(2)(A), (B).

583 U.S. at 287. Respondents further contend that if § 1225(b)(1) applies to "arriving aliens," then § 1225(b)(2), as the catchall, applies broadly to all other noncitizens in the United States who have not been admitted. (Sept. 12 Hearing Tr. at 16:1-22.)

Although petitioner agrees that § 1225(b)(1) includes arriving aliens who are subject to expedited removal, she argues that § 1225(b)(2) is a "catchall" only with respect to individuals who are affirmatively seeking admission and inspected at the border or its functional equivalent. (Sept. 16 Hearing Tr. at 21:25-23:4.)  For context, she provides several examples of individuals who fall within § 1225(b)(2) because they are "seeking admission" after returning from abroad and must be inspected by immigration officials prior to admission.  These noncitizens include lawful permanent residents ("LPRs") returning from abroad who potentially "abandoned their lawful permanent resident status by staying abroad too long," or "are subject now to a ground of inadmissibility that they wouldn't have otherwise been subject to had they remained in the United States."  (*Id.* at 4:14-5:17, 5:20-6:1.)  As petitioner explains, LPRs returning from abroad are not "arriving aliens" subject to expedited removal under § 1225 but are applicants for admission because "the examining officers at that point have to verify whether they are admissible to come into the United States."  (*Id.* at 6:5-9; *see also id.* at 22:16-23:16, 24:5-17.)  Petitioner also identifies noncitizens seeking to enter the United States under the visa waiver program, 8 U.S.C. § 1187, and United States citizens returning from abroad who cannot present proper documentation, as falling within § 1225(b)(2) because they are affirmatively seeking admission to the United States and must be inspected by border officials prior to entry.  (*Id.* at 22:18-23:16.)

Petitioner has the far better argument.  To begin with, the titles and headings[3] of § 1225 repeatedly cabin its application to "Inspections," which, as petitioner convincingly argues, occur

---

[3] *See, e.g.*, *Lopez-Campos*, 2025 WL 2496379, at *6 (although "not binding, [titles or headings] are instructive and provide the Court with the necessary assurance that it is at least applying the right part of the statute in a given circumstance" (citing *Merit Mang. Grp, LP v. FIT Consulting, Inc.*, 583 U.S. 366, 380 (2018)); *Dubin v. United States*, 599 U.S. 110, 120-21 (2023) ("This

at ports of entry, their functional equivalent, or near the border.  Moreover, the Court agrees with petitioner and other courts that § 1225(b)(2) plainly contemplates present affirmative conduct by 1) a noncitizen who is "seeking admission" and 2) and an inspecting immigration official who must determine whether that individual is entitled to admission to the United States.  *See, e.g.*, *Martinez*, 2025 WL 2084238, at *2.  Thus, even if petitioner could be deemed "an applicant for admission," under § 1225(a)(1), as respondents claim, she does not meet the requirements of § 1225(b)(2), because she was never "seeking entry" nor inspected by immigration officials.

Respondents contend that "[t]he immigration officer in this case would be the officer who issued the NTA [in 2017] charging the petitioner with being inadmissible because she was present without admission."  (Sept. 12 Hearing Tr. at 17:14-19.)  It is an awkward fit and unpersuasive; they fail to provide textual or legal support that the issuance of a NTA eight or so years after petitioner's entry into the United States substitutes for an inspection by an *examining* immigration officer at or near the border.  Nor do they explain how petitioner was "seeking admission" at the time the NTA was issued -- she was unquestionably present in the interior and had been for years -- so that phrase is rendered superfluous and violates the rule against surplusage.[4]  *See Lopez Benitez v. Francis*, 2025 WL 2371588, at *6 (S.D.N.Y. Aug. 13, 2025); *see also U.S., ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning.") (citation omitted); *TRW Inc. v. Andrews*, 534

---

Court has long considered that the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute.").

[4] Petitioner also explains that 8 C.F.R. § 235.1 characterizes inspection as occurring at (or near) the border.  *See* 8 C.F.R. § 235.1(d)(1) ("Each alien seeking admission . . . must establish to the satisfaction of the inspecting officer that the alien is . . . entitled, under all of the applicable provisions of the immigration laws and this chapter, to enter the United States."); *see also U.S. v. Kiam*, 432 F.3d 524, 529 (3d Cir. 2006) ("An alien at the border of our country . . . must convince a border inspector of his or her admissibility to the country by affirmative evidence.") (citing 8 C.F.R. § 235.1(d)(1)).

U.S. 19, 31 (2001) ("[N]o clause, sentence, or word shall be superfluous, void, or insignificant." (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).  Petitioner explained at the September 16 hearing that the powers of an officer reviewing an application for admission and in the course of that, issuing an NTA, do not fall under §§ 235/1225:  "When they issued the NTA in the interior [in 2017] they did not have the full scope and authorities under Section 235 and that is intentional by Congress."  (September 16 Hearing Tr. at 12:23-25.)

Respondents also argue that discretionary detention under § 1226(a) is limited to those noncitizens who have been admitted to the United States.  (Sept. 12 Hearing Tr. at 20:2-10, 25:16-26:5.)  In their view, any other reading of § 1226(a) would "in essence, be overruling or invalidat[ing] [§] 1225(b)(2)."  (*Id.* at 26:4-5.)  This argument is largely undermined by the fact that § 1226(a) does not include any language restricting its application to noncitizens who were admitted to the United States.  (*Id.* at 24:22-25:1.)  And they concede that prior to the July 8 policy change, § 1226(a) was the "predominant form of detention authority" for those arrested in the interior of the country.  (*Id.* at 22:9-11 ("I don't think there is any doubt that 1226 has been the predominant form of detention authority for folks who are in the country, whether admitted or not.").)

Further and seriously weakening respondents' position, even after the July 8 policy change, ICE arrested petitioner pursuant to a warrant Form I-200, *which specifically referenced INA § 236*:

| U.S. DEPARTMENT OF HOMELAND SECURITY | Warrant for Arrest of Alien |
|---|---|

File No. _____ 209 465 372

Date: _____ 07/16/2025

**To:** Any immigration officer authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations

I have determined that there is probable cause to believe that _____ RIVERA ZUMBA, DIANA _____ is removable from the United States. This determination is based upon:

☒ the execution of a charging document to initiate removal proceedings against the subject;

☒ the pendency of ongoing removal proceedings against the subject;

☐ the failure to establish admissibility subsequent to deferred inspection;

☒ biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law; and/or

☒ statements made voluntarily by the subject to an immigration officer and/or other reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law.

**YOU ARE COMMANDED** to arrest and take into custody for removal proceedings under the Immigration and Nationality Act, the above-named alien.

_____
(Signature of Authorized Immigration Officer)

P6698 SILVA - SDDO
(Printed Name and Title of Authorized Immigration Officer)

**Certificate of Service**

I hereby certify that the Warrant for Arrest of Alien was served by me at _____ Newark, NJ
(Location)

on _____ RIVERA ZUMBA, DIANA _____ on _____ 8 8 25 _____, and the contents of this
(Name of Alien)          (Date of Service)

notice were read to him or her in the _____ SPANISH _____ language.
(Language)

P 10254 PATEL

DO _____          _____
Name and Signature of Officer                Name or Number of Interpreter (if applicable)

Form I-200 (Rev. 09/16)

(D.E. 26-1.)

Courts have given great weight to the manner in which DHS treated the petitioner in determining which detention statute applies. *See Lopez Benitez*, 2025 WL 2371588, at *3 (holding that § 1225 did not apply because (1) DHS had consistently treated petitioner as subject to discretionary detention under § 1226(a) and (2) the "plain text, overall structure, and uniform case law interpreting" the statutory provision compels the conclusion).

18

Indeed, for nearly 30 years, § 1225 has applied to noncitizens who are either seeking entry to the United States or have a close nexus to the border, and § 1226 has applied to those aliens arrested within the interior of the United States.  The *Jennings* Court explicitly adopts this distinction, describing § 1225 as the detention statute for noncitizens affirmatively "seeking admission" into the United States, and § 1226 as the detention statute for noncitizens who are "already in the country."  583 U.S. at 289.  And although the *Jennings* Court characterizes § 1225(b)(2) as the "catchall" detention provision for noncitizens who are "seeking admission," it identifies § 1226(a) as the "default rule" for the arrest, detention, and release of non-criminal aliens who are already present in the United States.  *Id.* at 303.

This "distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."  *Zadvydas*, 533 U.S. at 693.  Admittedly, the line between a noncitizen who is "seeking admission" to the country and one who is "already in the country" is not always clear.  In *Department of Homeland Security v. Thuraissigiam*, for example, the Supreme Court held that a noncitizen who "succeeded in making it 25 yards into U.S. territory before he was caught" may have entered the country but was still treated as "an alien seeking initial entry."  591 U.S. 103, 139 (2020); *see id.* at 114, 139-40 (holding that a noncitizen detained "within 25 yards of the border" is treated as if stopped at the border).  The line is not blurred as to petitioner, who entered the United States without inspection or admission over 20 years ago, has resided in the United States since that time, and has formed significant ties here, which include her United States citizen child.

Notably, this Court need not defer to the September 5, 2025 BIA decision, *Matter of Yajure Hurtado*, and its newly-minted interpretation of § 1225(b)(2)(A).  *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400-01 (2024) (observing that while "agencies have no

special competence in resolving statutory ambiguities," "[c]ourts do"); *see also Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (explaining that the "weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control"). The BIA decision relies on respondents' "plain language" reading of §§ 1225(a)(1), (b)(2), which the Court rejects.[5] As explained by the District Court in *Salcedo Aceros v. Kaiser, et al.*, the BIA's "current position is inconsistent with its earlier pronouncements" which took the opposite position, and under *Loper*, "the Court has no obligation to defer to the BIA's view, particularly when that view has not 'remained consistent over time.'" 2025 WL 2637503, at *9 (N.D. Cal. Sept. 12, 2025) (quoting *Loper*, 603 U.S. at 386; citing *Skidmore*, 323 U.S. at 140).

### d.  Petitioner's Mandatory Detention Under § 1225 Violates the Due Process Clause

Petitioner's mandatory detention under § 1225 also violates her right to due process of law. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Freedom from imprisonment--from government custody, detention,

---

[5] The BIA also considered the legislative history of § 1125(a)(1), which was added to the INA as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, § 302, 110 Stat. 3009-546. The BIA found that "[t]he House Judiciary Committee Report makes clear that Congress intended to eliminate the prior statutory scheme that provided aliens who entered the United States without inspection more procedural and substantive rights than those who presented themselves to authorities for inspection." *Matter of Yajure Hurtado*, 29 I&N Dec. at 225. The Court need not consider the legislative history because it finds the statute is clear and simply notes that Congress' stated goal was to put certain noncitizens seeking entry on more equal footing with noncitizens who were present in the United States with respect to their <u>removal proceedings</u>. The cited legislative history does not suggest that Congress also intended to subject all noncitizens who entered the United States without inspection to mandatory detention during their removal proceedings.

or other forms of physical restraint--lies at the heart of the liberty that [the Due Process] Clause protects." *Id* at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)); *see also Mathews v. Davis*, 426 U.S. 67, 77 (1976) (explaining that due process "protects every [noncitizen] from deprivation of life, liberty, or property without due process of law. Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection") (internal citations omitted).

The adequacy of due process for civil detainees is generally guided by the three-part balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The *Mathews* factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. Here, the first and second *Mathews* factors weigh heavily in petitioner's favor, as she has been deprived of her liberty, erroneously subjected to mandatory detention under § 1225 during her removal proceedings, and denied due process protections, including the right to seek bond. The third *Mathews* factor also weighs in her favor as neither the government nor the public has a significant interest in detaining a long-term resident of the United States with no criminal history who is participating in cancellation of removal proceedings, which are civil in nature. *See generally* 8 U.S.C. § 1229. As petitioner argues, civil detention "is not suppose[d] to be punitive. It is suppose[d] to be regulatory." (Sept. 16 Hearing Tr. 13:22-23.) Petitioner's mandatory detention is not authorized by § 1225, serves no legitimate purpose, and amounts to punitive detention, warranting habeas relief.

### e. The Court Orders Petitioner's Release

At the September 16 hearing, petitioner's counsel asked for petitioner's immediate release from immigration detention. (Sept. 12 Hearing Tr. at 39:7-9; *see also id.* at 40:10-15 (arguing that respondents should be required to release petitioner and suggesting that they should not be permitted to rearrest her under § 1226 since they chose to detain her under § 1225).) In a subsequent letter, petitioner's counsel asks this Court to release her from custody and enjoin respondents from rearresting her absent a final order of removal or changed circumstances. (D.E. 30.)

As a general matter, writs of habeas corpus are used to request release from custody. *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005). A habeas court has "the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (noting that at "common-law habeas corpus was, above all, an adaptable remedy").

In this case, ICE arrested petitioner, and when her attorney scheduled a bond hearing before an IJ in Elizabeth, New Jersey, DHS drove petitioner out of the District and across multiple states. She is currently detained on the other side of the country, far from her family and attorneys. Her bond hearing scheduled for August 19 was denied as moot because she had been transferred. (D.E. 16 & Ex. C.)

Habeas does not provide meaningful relief with respect to some of the indignities petitioner has endured. *See Muhammad v. Close*, 540 U.S. 749, 750 (2004) (explaining that habeas is not an appropriate vehicle to challenge the circumstances of confinement). But due to its flexible nature, the Court may fashion a remedy that returns petitioner to her position prior to

22

her unlawful detention.  The Court finds that release from detention is the appropriate relief in this case and orders respondents to release petitioner within 24 hours.  The Court permanently enjoins respondents from re-detaining petitioner under § 1225.  Because § 1226(a) authorizes respondents to arrest and detain petitioner on a discretionary basis, the Court denies petitioner's request to enjoin them from re-detaining her unless her circumstances changes or she has a final order of removal.  However, to make the habeas remedy effective and to permit petitioner to return home to New Jersey, the Court temporarily enjoins respondents from re-arresting petitioner under INA § 236, 8 U.S.C. § 1226(a) for 14 days after her release.[6]

## IV.    **CONCLUSION**

For the reasons set forth above, petitioner's mandatory detention under § 1225 violates the INA and the Due Process Clause of the Fifth Amendment.  The Court grants the writ of habeas corpus and orders respondents to release petitioner from detention within 24 hours. Following her release, respondents are permanently enjoined from rearresting or otherwise detaining petitioner under § 1225 and may not arrest or otherwise detain petitioner under § 1226(a) for 14 days.  An appropriate order follows.

s/Katharine S. Hayden
Date: September 26, 2025                              Katharine S. Hayden, U.S.D.J.

---

[6] Petitioner may move to reopen this matter if respondents elect to detain her under § 1226(a) and do not timely schedule a bond hearing in which an immigration judge assesses whether she presents a flight risk or danger to the community.